v. Metropolitan General Insurance Company v. Metropolitan General Insurance Company Take your time to set up, but I'll go ahead and take your time to set up, but let me go ahead and call our last case this morning. It's number 21-11547, MSP Recovery Claims et al. v. Metropolitan General Insurance Company v. Metropolitan General Insurance Company Take your time to set up, but I'll go ahead and call  It's directed at something else, which is the knowledge requirement for the pre-suit notice statute. So it's not directly on point, but we did say in describing it that as to knowledge, it does indicate positive knowledge that you are the primary payer, and being primary payer would be someone who would have a demonstrated responsibility, correct? Correct. That is correct. I will say, though, back to Judge Jordan's point, you agree, because you've done a bunch of these, that there is a lot more information that you could have included here. With respect to the exhibit, in fact, we specify in the body of the complaint that more information could be provided. A richer exhibit would be provided upon request and the entry of a HIPAA order. Yeah, but I'm not sure that the rules allow you to say, hey, if you really want, give us a call and we'll give you more. As a matter of fact, there are other complaints of this ilk where there are exemplars provided, right? There are exemplars. And they could be skeletal in nature, but there's more, which I think gets to Judge Luck's point that you could have provided more specificity without running a file of HIPAA. That is correct, Your Honor. We could have used that. We could have identified . . . One for each defendant, for example. An exhibit for each defendant, that would be within the realm . . . For the body of the complaint, you could have said, here's an example on column 72 of page 22. Here's the one for Metropolitan General Insurance Company. Whack. And we did so in the proposed Second Amendment complaint, Your Honor. Think about it this way. You're seeking damages. Don't you have to tell people what the damages are or what the . . . I mean, and that is part of Judge Scola's point here is you don't even tell us what's owed. So there's a settlement for a certain amount of money. Some of that may cover covered damages. Some of it may not. How much is it covered? Let's assume all of it. How much is that amount? And for what? Is it for a broken arm? Is it for this? Because those things are, I think, relevant in assessing maybe not demonstrated responsibility as this was pegged, but something. Certainly damages, though, under Rule 8 can be alleged generally. And so in this particular instance, that's what we have done. We've alleged damages stemming from the defendant's purported misconduct, and we've provided factual allegations tied to their own statements to the federal government that give rise to the reasonable . . . a plausible claim that the damages which are being sought in the case are ultimately tied to the misconduct that is alleged. Now, obviously, on the last day of the case, we have to prove the amount of damages, and the defendant is already on knowledge of each one of these instances and the amount of the settlements and the amount of no-fault payments that have been made in each instance where it has acknowledged ongoing responsibility for medical payments and where it has acknowledged that it entered into a settlement with a Medicare beneficiary. So those are all in the backdrop. This is a question, though, of whether or not we've stated a plausible claim in compliance with Rule 8 and under Baxter and under this Court's, if not read as broadly as Your Honor suggested, at least its statements in the body of the ACE ruling. That is exactly what we were tracking here. It's, in fact, at paragraph 56 of the complaint, it's expressed. And so we're using that as a roadmap to come forward and seek these in the aggregate and to place the defendants on notice of their outstanding liabilities. You allege that in the complaint, though, for the pre-suit notice requirements. It says it there. They have knowledge for pre-suit notice purposes based on, and then you cite ACE. Right. And we do cite ACE. And in the paragraph preceding, we are using these filings as a basis to support the plausibility of demonstrated responsibility in connection with each of these. If I could just take a moment to address Your Honor's point regarding whether this case should have been dismissed with prejudice. I know Judge Jordan raised it. There was no basis for this case to be dismissed with prejudice on the basis of everything that we have been saying thus far. Except that Judge Gola thought that you chose . . . I'm paraphrasing him. He thought that you chose to stand valiantly on the complaint, claimed that it was sufficient, and then only relegated to a sentence or two in your response that, you know, should it be found wanting in any way, you'd like a chance to amend. And he thought that that was not enough. And by the way, we have some cases, they're not all uniform, but we have some cases saying party represented by counsel, a statement without any conclusion or any supporting information and without an amended complaint in a responsive motion is not enough. And if a court decides not to give you leave to amend, it's usually not abuse of discretion. So yeah, take that on. In the context of what took place here, Judge Gola actually cites this court's ruling in Iber, and the court is actually very clear in that case that the circumstances are markedly different than here. There had previously been an opportunity for leave to amend on the basis of instruction from the court. Here, although the decisions are not uniform, the precedent from this court recognizes that a party should be given at least one opportunity with instruction from the court. If you ask for it. Some cases say that if you don't ask, you're in trouble. If you're going to dismiss an action with prejudice, case law suggests that an opportunity should be given now. This case is readily distinguishable from every other action that is cited by the defendants because in this case, we actually did see, we filed a motion for leave to amend in connection with our Rule 59 motion. And this court's precedent in Thomas, Ducey, Spanish Broadcasting, all say that Rule 15A should have applied to that proposed pleading, which, Your Honor, in our discussion thus far, it provides the exemplars that Your Honor sought. It provides a more robust exhibit. And based upon the great weight of district court rulings that have looked at those cases, and even this court reviewed very similar pleadings in Kingsway and Allstate and Ace, where those cases were sent back down and sustained, that should have been reviewed. Instead, Judge Scola reviewed it through a purely motion for reconsideration type of standard, a Rule 59 standard, and that was foreclosed by this court's prior precedent. The foeman factor should have been provided. If you want to keep going, you're going to eat into your rebuttal time. With that... You can if you want. No, no. With that, I'll save the balance of my time for rebuttal, but I think the court knows where we stand with respect to amendment. Okay. We got it. Thank you. Looks like Mr. Zinconi was the only one who didn't get the memo about the colors to wear today. It's just a joke. Go ahead. Mr. Levy, whenever you're ready. May it please the court. Good morning, Your Honors. My name is Stephen Levy on behalf of the appellees. I'd like to get to start with talking about the initial complaint. For me, can you actually address whether or not they should have been allowed to amend? Yes. Did Judge Scola improperly treat it as a motion for reconsideration? Your Honor, the leave to amend standard is abuse of discretion and what Judge Scola held is that if you look at this court's Avena case and the Ivor case, and in Avena, this court said very clearly that it is improper for a plaintiff to oppose valiantly a motion to dismiss, sit back, and see how it would come out, and then, and only then, if they lose on the motion to dismiss, decide, well, we want to move for leave to amend. It's very clear that the motion for leave to amend should have been submitted with the initial opposition to the motion to dismiss. Had it been submitted, we would not have gone through all that briefing. Judge Scola would not have issued the initial decision. So you file it as, just in case I need this, here you go. That certainly seems to be what Avena suggests, Your Honor, and that saves a lot. Why does that make sense as a practical matter? Because that saves time and effort of the court having to consider something that may or may not . . . But what if the plaintiff thinks that . . . That they're correct. Yeah, the plaintiff thinks that the complaint is sufficient, but has a judge who thinks differently, and so the complaint, whether or not the initial complaint is sufficient matters because the litigant is going to have other situations like it and doesn't want to give up on that, but also wants to hedge against the possibility of being found wanting in 12B6 terms. But if a judge gets that alternative motion, what do you think a judge is going to do? A judge with a busy docket is going to do what? The judge will rule . . . he could rule on both. No, no, no. That's not going to happen. That's not what the busy judge is going to do. You know they're going to grant the motion for leave to amend. That's exactly right. And they're going to moot out the motion to dismiss, and they're going to force you to replete everything over again. And then we're going to be in the same boat because then you're going to file another motion, okay, as opposed to having the district court judge rule on the initial motion and say, okay, well, I think counts 1 through 10 are fine, but counts 15 through 20 need more . . . they need more meat on the bones. I would only say that if that were the case, then a case like Avena that would have to indeed not sit back and not just see how the lay of the land and not see how the motion to dismiss comes out. And then only after losing, file for an amended complaint would be rendered nugatory if that were the case because they could just sit back and wait and file for reconsideration. By the way, I think you're right in that respect that we have some cases which suggest exactly that. So I'm not saying you're wrong, and I'm not saying Zagoni's wrong either. I just think there's a fair amount of play in the joints with our precedent. But let's talk about the merits of the first complaint, or actually the amended complaint technically speaking, but that got dismissed. Why do you think that was sufficient? The first complaint had absolutely . . . I'm sorry, Your Honor. Why it was insufficient? The first complaint had absolutely no specifics in it. And if you look at almost every single complaint that this group files, and all of you have seen complaints from this group, they always include exemplar specific, exemplar claims. They always include exactly the things that they put in the proposed second amended complaint here. Counsel, I tend to agree with you and certainly with the tenor of Judge Jordan's question that there seem to be a lot of open pockets here. But the focus of the district court's order was on the demonstrated responsibility requirement. And as to that specific requirement, there seemed to be some significant allegations that there had been demonstrated responsibility by the insurance companies. There were allegations of settlements numerous times, and that those settlements are reflected in the attached exhibit with a contract number for the specific contract. There was allegations that everything that had been on there was reported to Medicare because that's where they got the data from. And that that by statute seems to indicate, forget what we said in Ace, but that by statute seems to indicate that those reportings are done at a time prescribed by the secretary only where there are settlements, judgments, et cetera. Doesn't that indicate, at least plausibly, not for sure, but plausibly that there's demonstrated responsibility? I'll answer that in two ways, Your Honor. First, the demonstrated responsibility requirement is not separate from the requirement of sufficient pleading. And the fact is- I agree. But as to demonstrated responsibility? As to demonstrated responsibility alone, if the treatment rendered is not related to a relevant automobile accident, then whether or not it was reported to Medicare, it is not owed by the insurance company. Except that the allegations state that they had cross-referenced all of this with accident reports. They even say the three states from which they cross-referenced it, that those are there. And that all of them are related to bodily injury from auto accidents. That's alleged in the complaint. What's alleged in the complaint, Your Honor, is that they have matched the claims to what we have reported. But what's not alleged is that there's any specific situation where they rendered a treatment that was, in fact, related to the automobile accident. These could have been situations where the MAO treated for cancer and was then trying to recover. Paragraph 53. Yes? Under the MSP system, plaintiffs have identified multiple instances in which plaintiff's assigners made conditional payments for accident-related medical expenses, which should have been paid and or reimbursed by defendants, the dot, dot, dot, including defendants entering into settlements with enrollees. And then in the next paragraph, it says those instances are listed in Exhibit A. I mean, isn't that an indication that all of those things are, quote, for accident-related medical expenses? That is not, in fact, the way I read that allegation, Your Honor, because they couldn't know that without having some specificity as to what the treatments were in the subsequent complaint. Counsel, there's no doubt they could be wrong. Let's be clear. They may be flat wrong that these are related to automobile. But in the allegation stage, where to take well-pled allegations is true and ask, are they plausible? Certainly, Your Honor. But the point is that in the subsequent complaint, they allege all these diagnosis codes. And even the diagnosis codes, by the way, don't necessarily mean that the treatment was related. But they didn't allege anything like that in the initial complaint. They allege no diagnosis codes, no specific exemplars, nothing. In this court's Ace case, I think it's very significant that in Ace, there were four underlying cases in Ace. In three of those cases, for Liberty Mutual, for auto owners, and for Ace, the plaintiffs allege specific exemplars, not just one, several exemplars. And those were the cases in Ace where this court reversed. In the one case in Ace, the Travers case. This issue of demonstrated responsibility was not, as you point out, frankly, well in your brief, Ace had nothing to do with what we're talking about here. I mean, yes, those complaints did say those things. They're discussed in the allegations. But at no time did we pass on the sufficiency of those complaints for demonstrated responsibility. No, but you did reverse on those cases where there were exemplars. But in the Travelers case, and this is very important, that was the one underlying case in Ace where there was no exemplar claim pled. And this court affirmed the dismissal of the Travelers case in Ace. But it affirmed that it made that dismissal without, rather than with prejudice, because in that case, the dismissal was based on standing. I'm just not sure how helpful that is, counsel, because Ace, again, dealt with, as you point out in your brief, some very, very different legal issues dealing with assignments and alternative affirmance grounds on pre-suit notice that have nothing to do with what I think the issue, what I understand the issue to be is, did the plaintiffs plausibly allege demonstrated responsibility with at least some claims that would meet the elements required by the Medicare Secondary Payer Act? And our position on that, Your Honor, is that as a pleading matter, they did not, because they did not have any specific exemplar claims which are required in order to raise this to the level of... Where's that requirement come from? The plausibility requirement of Twombly. Why does plausibility say that you have to have an exemplar, meaning CPT codes and initialed plaintiffs and amounts, as opposed to here's a list of contracts and settlements that we know were reported and we are alleging, based on our research, that those are for accident-related expenses? There's an acknowledgement that you're the primary payer. There's knowledge that you're the primary payer. And these are related to settlements that were entered into in a specific contract. I'm having a hard time understanding why that doesn't demonstrate responsibility. Now, are there other deficiencies that have been pointed out, both by Judge Scola and that are embedded in the question that Judge Jordan asked? There may be, but I'm having trouble seeing how Twombly requires an exemplar under the Medicare Payer Act. Twombly requires an exemplar for purposes of sufficient pleading generally of the claim. Judge Scola's dismissal was not limited to simply the demonstrated responsibility. He pointed out... Show me where that is. Tell me where in the order that is. I'm interested in that argument. I have Judge Scola's order right here. Show me where he dismisses on any basis other than the demonstrated responsibility requirement. Your Honor, Judge Scola specifically states that there were no specific instances alleged that could justify a pleading under Twombly. That is not only a demonstrated responsibility issue, that's a general pleading issue. That's the point. The point is that none of these cases... Here's the second-to-last sentence of the main body. Absent such information, in that paragraph laid out from Amerisher, the pleading fails to state cognizable claims that is completely devoid of non-conclusory factual allegations that would allow the court or the defendants to determine whether plaintiffs have stated cognizable claims under the MSB, specifically whether the plaintiffs have demonstrated, in quotes, a responsibility by any of the defendants to make payments under the MSB. But he also referred, Your Honor, to non-conclusory allegations. Just saying, here's an Exhibit A with a bunch of circumstances that we've matched with no further information about those circumstances does not raise the pleading above the level of an impermissibly conclusory pleading. And even after... Page four is what you want to... Yes. Well, I'd like to because in page four, after discussing the demonstrative responsibility deficiencies that he thought existed, Judge Kola also says this. The court agrees with defendants that the plaintiff's amended complaint does not include any facts whatsoever related to any enrollee, the amount charged to plaintiff's assigners, or amounts they supposedly paid, what exactly such payments were, what the treatments were provided, what exactly was supposedly covered and not paid by defendants, and what coverage and terminations were made by the defendants. There's a little more. And then the sentence that I read about absence of those things, which are specifically whether plaintiffs have demonstrated responsibility. But this leads me back to my original question, which is then when you have a district court judge that tells you why they think that your pleading is insufficient, why then should they not be allowed to amend their complaint in order to then satisfy what the deficiencies that the district court judge found? Your Honor, they knew about these deficiencies before they pled because the Amerisher case and the MGA case that we relied on in our brief that had previously held that a complaint that only contained an Exhibit A was not legally sufficient were both decided before the briefing in this case. We made a big point of that in our briefing below. They knew that that was our main point, that there had to be at least some specifics beyond Exhibit A, and yet they chose to valiantly stand on their complaints. The cases that you rely on, which is the Avena and Ivor, those are both non-published cases, correct? That's correct. They do have some value, though, Your Honor. They can be cited, and I think that they are significant cases to show that Judge Scola didn't abuse his discretion. They have value, but they have non-presidential value. Yes, Your Honor. Judge Scola did, however, in denying leave to amend, rely on cases from this court. He didn't express no ground for his decision, which are situations where you reverse for abuse of discretion. He gave grounds for his decision not to allow leave to amend based and rooted in this court's case law, and that was a matter of his discretion, and we submit that his discretion should not be disturbed on that. I do want to get very quickly to my alternative ground for affirmance, which is 41A1B. We've set that forth clearly in the brief, but I will just point out they filed two previous class actions against metropolitan defendants. Then they voluntarily dismissed those. They then filed this class action, so this is the third action, so more than one previous action was voluntarily dismissed. For you to win completely across the board on that argument, you've got to show privity, right? Yes, under Seeley. That's this court's decision, and Seeley is the key decision. We showed very clearly below . . . Does that require . . . If we think that that argument should be addressed, does that privity aspect of the determination require or possibly require some factual determination by the district court? We don't believe so, Your Honor, because we showed through public records and through admissions in the complaint where they admitted the relationships between the plaintiffs that indeed there is privity between the plaintiffs. It's the same cause of action relating to this failure to make alleged proper payments, and the fact that they added a few . . . Counsel, that's still a finding of fact, and your opposing counsel would be able to maybe present some contrary evidence that these are not related entities. I mean, a finding would have to be made to make that call, even if the documents say what you . . . It's not a conclusion of law. Well, Your Honor, I would say that it is, but certainly . . . It is, but based on underlying facts, right? Whether or not you are in privity is probably a mixed question, I think, because you need to figure out what the facts on the ground are, right? Who's a subsidiary of who? Who controls whom, et cetera, et cetera? And then from that, you determine whether privity exists. I think we've . . . You haven't been here for the rest of the days this week, but I think you've heard from the three of us, the lawyers have, that we're expressing some reluctance about taking on things here that may require us to do factual development ourselves. I see that my time has expired, but if I could just finish the answer to that question . . . Sure, you've got one minute. I would just say on that privity point that under Seeley, the issue is whether the parties have the same interests, and clearly all of the MSP entities here had the same interest in allegedly showing that the appellees failed to make the proper payments and the appellees all had the same interest in showing that their payment procedures were correct. For all the foregoing reasons, Your Honors, we respectfully request this Court to affirm the decision below. Thank you. Thank you very much. Thank you. Thank you. With respect to the . . . With respect to Defense Counsel rooting its argument in Avena, the Avena decision was indeed not reported and on top of that, the underlying dismissal was a dismissal without prejudice, raising very different concerns than this case before the Court. I pulled the quote from Ivor and I would like to read it to the Court. There, this Court acknowledged that we have never required district courts to grant counsel plaintiffs more than one opportunity to amend a deficient complaint. Granted, however, we were not granted an opportunity to amend the complaint in light of the district court's decision, nor have we concluded that dismissal with prejudice is inappropriate where a counsel plaintiff has failed to cure a deficient pleading after having been offered by the Court ample opportunity to do so. None of that took place in this . . . We also . . . These cases are not all directly on point, but we also have cases saying that if a counsel party doesn't indicate its desire to amend until it's too late, then it's usually not an abuse of discretion to say, nope, can't do it, right? It's a fair point. That has happened. However, for precisely the discussion that was taking place before and because of the logical conclusion that under the circumstances, if that were the case, a preemptive motion for leave to amend would have to be filed every time a motion to dismiss is pending and a particular complaint could never be tested for sufficiency. Counsel, that doesn't seem to be true. I mean, the point, I think, of a rule like this, and I think we have to decide what that rule is, is that once you get the motion to dismiss, you know what they're saying. Here are the exact things they're saying are wrong with your complaint. You can look at that and say, they're just wrong. Our complaint's solid, and that's the call that you make. Or you can say, you know, they got a point there. We need to beef this thing up, so let's amend. In other words, by the time the district court rules and puts in all that work, you're getting a finished product. I think that would be the point of making that rule. I could see the other rule, which is that it's the situation that Judge Jordan and Judge Lagoa talked about, but I also understand a prior rule of, you're an attorney for your client, and you've got to make the call of what you want the district court to actually rule on. Because once it takes that task, and to then ask it to do so seems to be a waste of a lot of people's time. In these particular cases, there's a great divergence among what district courts have done with these particular types of complaints, and under the circumstances unique to this case, I would say that the rule simply should not apply. Although only two... And I know you want to get, I'm sorry. What do you make of the fact that you did have, you used your one opportunity to amend beforehand? How does that play into the analysis? This particular amendment was a housekeeping amendment that was filed seven days after the complaint was initially filed. It addressed a typographical paragraph incorporation error and was in no way a substantive amendment. The cases cited by the appellants in the brief suggest that that type, it was a Bryant case, that type of an amendment has not been considered by this court to be a substantive amendment which would have burned up the amendment of right or certainly would have been factored negatively into a 15A analysis. And that's exactly what applied here. The 15A analysis should have been conducted. It was not conducted. No reading of the district court's ruling on the motion for reconsideration could be said to consider the Fomen factors. They are absent, blatantly absent, and this court's rulings and binding precedent in reported opinions state that the 15A liberal standard applied at that stage of the case and it's precisely for the reasons stated here. Although there was a scheduling order that had been entered, there could have been no undue delay. Judge Scola himself had set out a . . . Can I ask you a question? Given the proliferation of these cases, not only here in this jurisdiction but I presume elsewhere in the country, the people who are litigating these claims on behalf of the MSP entities, you guys are almost becoming an institutional litigant. And I don't mean that in a pejorative sense. You're here a lot, right, and you're in district court a lot. And if that's the case, is there something to be said for the suspicion that the lawyers who are litigating these claims are testing the waters to see what gets through and what doesn't get through in different jurisdictions with different complaints, with different defendants? Because if your end result is to obtain a judgment, right, for these unpaid matters from these defendants, right, and you've had complaints in the past. I mean, not you personally, but that have succeeded, have gone through the mill, have been found to be sufficient, and are okay. Why is this happening? And again, the instinct, the antenna goes up in my head to think, it's a lot easier to file this complaint than to file a complaint with exemplars. So, you know, someone's trying to see whether or not this complaint will survive. And if that's the case, all the later complaints are not going to have exemplars. Well, the why here, Your Honor, is because this case was filed just a month and a half after the ACE ruling had been rendered. And the plaintiff's reading of that particular decision suggested that this was a way of stating a plausible claim, at least with respect to demonstrated with responsibility, which was really the only requirement that the district court took issue with. So that's the reason that this case took the form that it did. Now, the court ultimately disagreed. We never had the opportunity to respond to that. And when we did directly do so on motion for reconsideration, in a pleading that should have been liberally construed and liberally granted, a request for amendment rather, that should have been liberally granted under Rule 15A, that opportunity was not afforded. All right. You've got 30 seconds. I don't want to cut you off, so you've got 30 seconds to wrap up. Just briefly on the two-dismissal rule, the two-dismissal rule argument has continued to be, was asserted below and continues to be a favorite of the defendants in this particular instance. The conception of that, of res judicata, that's advanced by the defendants in their brief would be the broadest that this court has ever taken. It is foreclosed by the Manning and Enri Piper decisions and would lead to absurd conclusions, namely that the two dismissals that are at issue here occurred in early and mid-2018. According to the defendants, the simple fact of subsequent assignments to go and collect different debts on behalf of different Medicare Advantage plans would eviscerate those Medicare Advantage plans' underlying recovery rights, despite the fact that they took no role in the initial action. With that, and for the many reasons we've discussed today, we would ask for the court to reverse the order of dismissal, reverse the order of denying motion for reconsideration, and remand the case for the proceedings. Thank you, Your Honor. All right, thank you both very much.